Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 328 | **DATE** | 6/17/2003 |
| **CASE TITLE** | Fix vs. Quantum | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff Roger Fix's motion for summary judgment on Count I of his Complaint is granted. Judgment is entered in favor of the Plaintiff and against Defendant Quantum Industrial Partners LDC.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | JUN 18 2003 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | 25 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | 03 JUN 17 PM 5:21 | date mailed notice | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER L. FIX, | ) |
| Plaintiff, | ) No. 02 C 0328 |
| v. | ) Honorable Amy J. St. Eve |
| QUANTUM INDUSTRIAL PARTNERS LDC, SOROS FUND MANAGEMENT LLC, and SOROS PRIVATE EQUITY PARTNERS, L.L.C., | ) |
| Defendants. | ) |

JUN 18 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Plaintiff Roger L. Fix has moved for summary judgment on Count I of his Complaint against Defendant Quantum Industrial Partners LDC. For the reasons discussed below, Plaintiff's motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

25

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## FACTUAL BACKGROUND

Plaintiff Roger L. Fix is the former Chief Operating Officer and Chief Executive Officer of Outboard Marine Corporation ("OMC"). (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 1.) Plaintiff's employment with OMC was governed by a written employment agreement. (*See id.*, ¶ 6; *see also* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. A.) That employment agreement was negotiated by Plaintiff, OMC and Defendant Quantum Industrial Partners LDC ("Quantum"), which was an investor in OMC. (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 9-10, 13.)

2

The Plaintiff's employment agreement requires OMC to make certain financial payments to him in the event of a "Change in Control of the Company":

> Upon the occurrence of a "Change in Control" . . . (i) all Fix Options which have not theretofore vested shall immediately and (ii) the Company will make a cash payment (the "Make-up Payment") to Employee in an amount equal to the positive difference, if any, of (A) $5 million, less (B) the "Exercise Value of the Fix Options".

(*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 24; *see also* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. A, at § 7(b).) Quantum refers to this as "an equity-based make-up payment." *See* R. 19-1, Def.'s Mem. in Opp. to Mot. for Summary Judgment, at pp. 3-4.)

Under the employment agreement, a "Change in Control" includes "any sale to any person who is not otherwise an affiliate of the Company of more than 50% of the property, assets or business of the Company and its subsidiaries and affiliates taken as a whole." (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 27; *see also* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. A, at § 7(b).) The employment agreement also defines "Change in Control" to include any approval by the Board of Directors of "the sale of all or substantially all of the property or assets of the Company . . . provided, however, that . . . the occurrence of any specific event as described in this paragraph shall not constitute a Change in Control of the Company if during the 30-day period immediately preceding the date of the Change in Control of the Company the Board of Directors, by a majority vote, deems that the occurrence of such specific event does not constitute

a Change in Control of the Company." (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 26; *see also* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. B, at pp. 12-13.)[1]

Quantum agreed to guarantee the payment of the Plaintiff's salary, bonuses and benefits, including any payments in the event of a "Change in Control":

> Quantum Industrial Partners LDC ("Quantum") hereby irrevocably and unconditionally guarantees the full and timely payment and delivery of all salary, bonuses, awards, payments and benefits, of whatever kind or nature (including Change in Control and severance payments), provided by the Company to the Employee, his dependents, heirs and beneficiaries under the terms of this Agreement. The guaranty of the obligations under this Agreement that is provided in this Section 24 shall survive the expiration of this Agreement.

(*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 8, 15; *see also* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. A, at § 24.)

On December 22, 2000, the Board of Directors of OMC approved the sale of all or substantially all of the company's assets. (*See* . 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 29-30; *see also* R. 20-1, Def.'s Appendix to Def.'s L.R. 56.1(b)(3)(A) Resp., Ex. 9, at pp. 1-2.) The Board of Directors did not pass any resolution indicating that its approval of the sale of all or substantially all of the assets of OMC would not constitute a "Change in Control." (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 31.) On February 9, 2001, the Bankruptcy Court for the Northern District of Illinois approved the sale of assets of more than 90% of the assets of OMC

---

[1] This second definition for "Change in Control" is drawn from OMC's Personal Rewards and Opportunities Program ("PROP"). (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 26.)

4

to JTC Corp. and to Bombardier. (*See id.*, ¶¶ 32, 33.)[2] Effective February 16, 2001, the Board of Directors of OMC terminated the Plaintiff's employment without cause. (*See id.*, ¶¶ 35-36.)

The Plaintiff contends that either (1) the decision by the Board of Directors of OMC to sell all or substantially all of the assets of OMC, or (2) the sale of the assets of OMC to Bombardier and JTC Corp., constituted a "Change in Control" within the meaning of his employment agreement. Accordingly, pursuant to Sections 7(b) and 24 of his employment agreement, the Plaintiff maintains that he is entitled to the difference between $5 million and the "exercise value of the Fix Options." In addition, the Plaintiff argues that he is entitled to one half of the excise tax due on that amount, plus one half of the related tax due on that amount.[3] Finally, the Plaintiff contends that he is entitled to prejudgment interest.

## ANALYSIS

**1. The Plaintiff Is Eligible For The Equity-Based Make-Up Payment Because His Employment Agreement Is Clear And Unambiguous.**

Quantum argues that the Plaintiff's employment agreement is ambiguous because no rational person would consider the sale of assets in connection with bankruptcy to fall within either definition for a "Change of Control." Quantum contends that such a reading of the employment agreement makes no sense because the parties' "intent" and "purpose" was to give the Plaintiff an equity upside in the event of a successful turnaround for OMC. (*See* R. 19-1, Def.'s Mem. in Opp. to Mot. for Summary Judgment, at pp. 8, 10.) Further, Quantum suggests

---

[2] The sale of assets to JTC Corp. and to Bombardier actually occurred on March 6, 2001 and March 9, 2001 respectively. (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 32.)

[3] The Plaintiff claims that the amounts due for these taxes is $478,105. (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 43.)

5

that it is clear that the neither definition for "Change of Control" applies in the bankruptcy context because neither definition refers to bankruptcy and because the parties understood that the equity-based make-up payment would not be implicated in the event of bankruptcy. (*See id.*, at pp. 5-6.)

Delaware law, which the parties agree controls here, provides that where a contract is clear and unambiguous, the courts may not look to extrinsic evidence to interpret the contract. *See O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) ("Delaware courts are obligated to confine themselves to the language of the document and not to look to extrinsic evidence to find ambiguity."); *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997) ("Extrinsic evidence is not used to interpret contract language where that language is 'plain and clear on its face.'") (citation omitted); *see also Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("When the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity. Then the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.").

Quantum's arguments cannot overcome the plain language of the Plaintiff's employment agreement and the PROP, which define "Change of Control" to include essentially any sale of all or substantially all of OMC's assets, whether that sale occurs in the context of bankruptcy or not. Neither definition of "Change of Control" contains any limitation which might conceivably exclude a sale of OMC's assets in connection with a bankruptcy liquidation, and absent such a limitation, the Court will not read one into the Plaintiff's employment agreement or conclude that the agreement is ambiguous. *See Rhone-Poulenc Basic Chemicals Co. v. American Motorists*

*Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty.").

The Court notes that it would have been easy for the parties to include specific language excluding any sale of assets in connection with bankruptcy from the definition of a "Change of Control." Indeed, the PROP definition for "Change of Control" includes an exclusion for an initial public offering. (*See* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. B, at pp. 12-13.) Further, the PROP definition for "Change of Control" includes an exclusion for any event that the Board of Directors deems does not constitute a "Change of Control." (*Id.*) Thus, the parties could have excluded any sale of assets in connection with bankruptcy from the definition of a "Change of Control" by incorporating similar language in the Plaintiff's employment agreement or by a obtaining a resolution from the Board of Directors deeming such a sale to be outside the definition of a "Change of Control." That they did not do so suggests that the "Change of Control" language should not be read restrictively.

## II. The Plaintiff Is Eligible For The Equity-Based Make-Up Payment Because OMC Terminated Him *After* The Change Of Control Provision Was Implicated.

Quantum argues that even if his employment agreement is clear and unambiguous the Plaintiff is not eligible to receive the equity-based make-up payment because OMC terminated him effective February 16, 2001 and the sale of OMC's assets did not occur until March 6, 2001 and March 9, 2001. Although it is correct as to the sequence and timing of these events, Quantum mis-reads the definition of "Change of Control." Under the PROP, a change of control occurs if "the Board of Directors *approves* the sale of all or substantially all of the property or assets of the Company . . . " (*See* R. 16-1, Pl.'s L.R. 56.1(a)(3) Statement, Ex. 1, Ex. B, at pp. 12

(emphasis added).) In this case, it is clear that the Board of Directors approved of the sale of OMC's assets prior to the effective date of the Plaintiff's termination. (*See* R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 29-30, 32-33.) Thus, contrary to Quantum's suggestion, the Plaintiff is eligible to receive the equity-based make-up payment because he was continuously employed by OMC through the date of the change in control.

### III. Quantum Has Failed To Supply Evidence That Creates A Genuine Issue Of Material Fact On Its Defense Of Contract Reformation.

Finally, Quantum argues that, even if the employment agreement is plain and unambiguous and even if the Plaintiff is eligible to collect the equity-based make-up payment, the Plaintiff's motion for summary judgment should be denied because there is a material issue of fact on its defense of contract reformation.

In order to survive summary judgment on its defense of contract reformation, Quantum must present some evidence that: (1) the Plaintiff and OMC had a "clear understanding" that the equity-based make-up payment would not be triggered in the event of bankruptcy and the Plaintiff's employment agreement fails to reflect that "clear understanding" because of a mutual mistake by both parties, or (2) the Plaintiff and OMC had a "clear understanding" that the equity-based make-up payment would not be triggered in the event of bankruptcy and the Plaintiff's Employment Agreement fails to reflect that "clear understanding" because of the Plaintiff's fraud or knowing silence. *See Cerberus Intern., Ltd. v. Apollo Management, L.P.*, 794 A.2d 1141, 1151 (Del. 2002); *see also Collins v. Burke*, 418 A.2d 999, 1002 (Del. 1980) ("The Courts of this State have always insisted in reformation cases on a showing of mutual mistake or, in appropriate cases, unilateral mistake on plaintiff's part coupled with knowing silence on defendant's part.").

Under Delaware law, the grounds for contract reformation must be proven by clear and convincing evidence. *See Cerberus Intern., Ltd.*, 794 A.2d at 1151-52.

Here, Quantum cannot avoid summary judgment because it has not presented evidence of a "clear understanding" that the equity-based make-up payment would not be triggered in the event of bankruptcy. To the contrary, Quantum contends that "[t]he subject of bankruptcy never came up in the negotiations of Fix's employment agreement." (*See, e.g.*, R. 18-1, Def.'s L.R. 56.1(b)(3)(A) Resp., ¶ 37.) Absent some of evidence of a "clear understanding" of the specific change to the employment agreement that it seeks, Quantum cannot avoid summary judgment on its contract reformation defense. *See Hob Tea Room v. Miller*, 89 A.2d 851, 856-57 (Del. 1952) ("Unless there was a clear understanding with which the formal contract conflicts, there is, of course, no comparative standard upon which to base a reformation and the contract as executed must stand.").

## CONCLUSION

Plaintiff Roger Fix's motion for summary judgment on Count I of his Complaint is granted. Judgment is entered in favor of the Plaintiff and against Defendant Quantum Industrial Partners LDC.

DATED: June 17, 2003  ENTERED:

AMY J. ST. EVE
United States District Court Judge

9